VEHICLE IP, LLC, Plaintiff,

v.

AT & T MOBILITY LLC, Cellco Partnership, Networks in Motion, Inc., Telecommunication Systems, Inc., and Telenav Inc., Defendants.

C.A. No. 09–1007–LPS

United States District Court,
D. Delaware.

Signed 12/30/2016

---

320

Martina Tyreus Hufnal, FISH & RICH-ARDSON P.C., Wilmington, DE, Michael J. Kane, William R. Woodford, Jason M. Zucchi, and Phillip W. Goter, FISH & RICHARDSON P.C., Minneapolis, MN, Juanita Brooks, Geoff D. Biegler, FISH & RICHARDSON P.C., San Diego, CA, Attorneys for Plaintiff.

John G. Day, Tiffany Geyer Lydon, and Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE, John W. Shaw, Andrew E. Russell, and David M. Fry, SHAW KELLER LLP, Wilmington, DE, John P. Schnurer, Kevin J. Patariu, and Evan S. Day, PERKINS COIE LLP, San Diego, CA, David R. Clonts, Manoj S. Ghandi, and Michael F. Reeder, II, AKIN GUMP STRAUSS HAUER & FELD LLP, Houston, TX, Steven M. Zager, AKIN GUMP STRAUSS HAUER & FELD LLP, New York, NY, Floyd B. Chapman, Kevin P. Anderson, and Karin Hessler, WILEY REIN LLP, Washington, DC, Attorneys for Defendants.

## MEMORANDUM OPINION

STARK, U.S. District Judge:

## I. BACKGROUND

Vehicle IP, LLC ("Vehicle IP" or "Plaintiff") filed suit against Telecommunication Systems, Inc., Networks in Motion, Inc., and Cellco Partnership (collectively, "TCS Defendants") and against Defendants AT & T Mobility LLC and Telenav, Inc. (collectively, "Telenav Defendants" and, together with TCS Defendants, hereinafter "Defendants"), alleging infringement of claims 4–6, 8, 9, 15–17, 19, 21, 25, 27, 28, 30, and 32 of U.S. Patent No. 5,987,377. (D.I. 1; D.I. 377 Ex. B at 2) The '377

patent describes and claims systems and methods for determining an expected time of arrival of a vehicle equipped with a mobile unit using a dispatch remotely located from the vehicle. (*See* '377 patent col. 1 ll. 52–65)

The parties filed motions to exclude certain expert testimony and motions for summary judgment. The Court heard oral argument on the pending motions on September 7, 2016. (D.I. 515) A jury trial involving Vehicle IP and the Telenav Defendants is scheduled to begin on February 13, 2017, while a jury trial involving Vehicle IP and the TCS Defendants is scheduled to begin on July 24, 2017.

For the reasons stated below, the Court will grant the TCS Defendants' motion for summary judgment of no willful infringement and deny all of the other motions addressed in this Opinion.

## II. LEGAL STANDARDS

### A. Motions to Exclude

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702(a) requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

■ There are three distinct requirements for proper expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See Elcock v.*

*Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

### B. Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct.

1348; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

### C. Motion to Stay

 Whether or not to stay litigation is a matter left to the Court's discretion. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F.Supp. 656, 658 (D. Del. 1990) (citing *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976)). In exercising this discretion, the Court must weigh the competing interests of the parties. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936). To do so, the Court generally considers: (1) whether

a stay will simplify the issues and trial of the case, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Cephalon, Inc. v. Impax Labs., Inc.*, 2012 WL 3867568, at *2 (D. Del. Sept. 6, 2012).

### III. Discussion

#### A. Evidentiary Motions

##### 1. Vehicle IP's Motion to Exclude Dr. Ugone's Expert Opinion Regarding Non–Comparable License Agreements (D.I. 372)

 Vehicle IP moves to exclude opinions of the TCS Defendants' damages expert, Dr. Ugone, that relate to and rely on allegedly non-comparable licenses. Vehicle IP asserts that Dr. Ugone did not establish that those licenses are economically comparable. (D.I. 373 at 6–8) "[T]he licenses relied on ... in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit," *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009), and an expert "must account for differences in the ... economic circumstances of the contracting parties," *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010). Dr. Ugone did so here. He analyzed the nature of the licenses at issue, considering factors such as the licensed technology, products, royalty structure, identity of parties, and date of licensing. (D.I. 436 at 4–7) Dr. Ugone's testimony relies on sufficient facts, will help the jury, and is sufficiently reliable to meet the requirements of Rule 702. Vehicle IP's motion will be denied.

##### 2. Vehicle IP's Motion to Exclude Dr. Ugone's Expert Opinion Regarding Apportionment (D.I. 372)

Vehicle IP moves to exclude Dr. Ugone's opinion concerning 50% apportionment of profits, arguing that he failed to cite any

evidence supporting this percentage as being the appropriate apportionment and, hence, his opinion is arbitrary. (D.I. 373 at 12) But Dr. Ugone did not propose a 50% apportionment. (D.I. 436 at 8) Rather, he used that figure as an example to argue that Vehicle IP's expert assigned an unreasonably high portion of profits to Vehicle IP. (D.I. 440 Ex. A at ¶ 127) Vehicle IP's arguments go to the weight to be given to Dr. Ugone's opinions, and not to their admissibility. The Court will deny Vehicle IP's motion.

### 3. Vehicle IP's Motion to Exclude Mr. Bakewell's Expert Opinion Regarding Non–Comparable License Agreements (D.I. 372)

■ Vehicle IP moves to exclude opinions of the Telenav Defendants' damages expert, Mr. Bakewell, regarding an ArrivalStar/Telenav agreement. (D.I. 373 at 9) Vehicle IP asserts that Mr. Bakewell failed to perform the required economic-comparability analysis. (*Id.*) Contrary to Vehicle IP's position, Mr. Bakewell performed sufficient analysis of the ArrivalStar/Telenav agreement. Mr. Bakewell analyzed the comparability of technology, license terms, identity and business of the parties, date of licensing, and duration of license. (D.I. 374 Ex. 17 at ¶ 182–93) Vehicle IP's motion will be denied.

### 4. Vehicle IP's Motion to Exclude Expert Opinions Regarding Non–Infringing Alternatives (D.I. 372)

Vehicle IP urges the Court to exclude portions of the Telenav Defendants' expert opinions, offered by Mr. Bakewell and Mr. Andrews, relating to non-infringing alternatives. (D.I. 373 at 10) Vehicle IP asserts that the first time the Telenav Defendants disclosed these specific alternatives was in their rebuttal non-infringement and damages reports. (*Id.*) The Telenav Defendants respond that, in fact, one non-infringing alternative was disclosed in an interrogatory. (D.I. 444 at 3) They further contend that Vehicle IP is not prejudiced by the late disclosure of the second alternative, as it is based solely on the legal requirements of infringement and no factual issues are in dispute. (*Id.* at 4–5)

■ Parties are obligated to supplement their contentions when it becomes necessary to do so. *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party who has … responded to an interrogatory … must supplement or correct its disclosure or response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete …."). The Court has the power to exclude evidence as a sanction for a party's failure to comply with this obligation. Specifically, Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In determining whether a failure to disclose is harmless, courts consider such factors as: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence. *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

■ Having considered the record with respect to the various factors, the Court concludes that excluding expert opinion on non-infringing alternatives is not warranted. The Telenav Defendants answered an interrogatory by stating that they would "consider design arounds and non-infringing alternatives, such as performing ETA calculations on a back-end server instead

of at the mobile unit." (D.I. 444 at 3) Although the Telenav Defendants did not offer more specificity until their rebuttal expert reports, the disclosure in the interrogatory response substantially reduced the level of surprise Vehicle IP could have experienced upon receiving the Telenav Defendants' expert report, and Vehicle IP identifies no significant prejudice resulting from the late disclosures. Other factors, including that Vehicle IP fails to demonstrate bad faith on the Telenav Defendants' part and that Vehicle IP was able to address the proposed non-infringing alternatives in its expert reports, similarly weigh against excluding the expert opinion. Accordingly, the Court will deny Vehicle IP's motion.

### 5. Vehicle IP's Motion to Exclude Testimony Based on the Wrong Claim Constructions (D.I. 378)

■ Vehicle IP contends that both the TCS Defendants and the Telenav Defendants propose to present expert testimony that applies an incorrect construction for the claim term "dispatch." (D.I. 380 at 28–29) In particular, Vehicle IP argues that Defendants' experts impermissibly add requirements to the Court's construction. (D.I. 470 at 13–14) The Court disagrees. Defendants' experts apply the Court's construction and, based on that construction, offer opinions relating to the alleged infringement of the '377 patent by Defendants' accused products. (D.I. 437 at 8–10; D.I. 446 at 13–15) That Vehicle IP disagrees with the Defendants' experts' application of the claim construction goes to the weight to be given to the testimony, not its admissibility. Vehicle IP's motion will be denied.

### 6. Telenav Defendants' Motion to Exclude Dr. Sullivan's Benchmark Product Apportionment Analysis (D.I. 394)

■ The Telenav Defendants argue that the analysis of Vehicle IP's expert,

Dr. Sullivan, is unreliable because it fails to apportion down to the value of the method for determining estimated time of arrival taught by the '377 patent and makes no attempt to exclude the value of non-patented features. (D.I. 395 at 1–2) But Dr. Sullivan specifically selected benchmarks to target the claimed ETA feature alone. (D.I. 430 Ex. 1 at ¶¶ 135–37) He also calculated the portion of a monthly subscription price that "can be attributed to the patented ETA feature, while the remaining [amount] is attributable to all other features." (*Id.* at ¶ 154)

The Telenav Defendants further argue that Dr. Sullivan used an impermissible "churn" rate—based on the projected churn rate for the AT & T Navigator before the product launched—to convert single payment fees into monthly recurring charges. (D.I. 395 at 8–9) Vehicle IP counters that the churn analysis is "mathematically sound and based on an industry projection for AT & T Navigator around the time of the hypothetical negotiation," and further that Dr. Sullivan also performed another calculation using a churn rate suggested by the Telenav Defendants. (D.I. 429 at 8) The Telenav Defendants' arguments, therefore, go to the weight to be given to Dr. Sullivan's opinions and not their admissibility. The Court will deny the motion.

### 7. Telenav Defendants' Motion to Exclude Dr. Sullivan's Alternative Royalty Rate Theory (D.I. 394)

■ The Telenav Defendants assert that Dr. Sullivan's reliance on licenses, with lump-sum payments, to Garmin and UPS in calculating a royalty rate of [redacted] based on the entire revenue base of the accused products is unreliable. (D.I. 395 at 11) In particular, the Telenav Defendants argue that the licenses were litigation-driven and do not represent a royal-

ty for the patented invention. (D.I. 475 at 5–6)

 "[I]t is generally required that royalties be based not on the entire product, but instead on the 'smallest saleable patent-practicing unit.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). "Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *Id.* Further, "care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product," *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014), as disclosure of total revenue "cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue," *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). It has been recognized, however, "that licenses may be presented to the jury to help the jury decide an appropriate royalty award." *Ericsson*, 773 F.3d at 1227.

Dr. Sullivan's analysis presents the Garmin and UPS licenses as comparable licenses and considers a number of factors that may be relevant in assessing the weight of his opinion. (D.I. 430 Ex. 1 at ¶¶ 111–18) For example, Dr. Sullivan addresses features of the Garmin and UPS devices and discusses that the licenses were the result of litigation. (*Id.* at ¶¶ 114–15) Dr. Sullivan also factors into the reasonable royalty the greater subscriber base for the accused products. (*Id.* at ¶¶ 173–76) "[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Ericsson*, 773 F.3d at 1227. Accordingly, the Court will deny the Telenav Defendants' motion.

## B. Summary Judgment Motions

### 8. TCS Defendants' Motion for Summary Judgment of Non–Infringement (D.I. 375)

 The TCS Defendants seek summary judgment that they do not infringe any of the asserted claims of the '377 patent. Each of the asserted claims includes the term "dispatch." Following a *Markman* hearing, the Court construed "dispatch" to mean "a computer-based communication and processing system remotely located from the vehicle that manages and monitors vehicles." (D.I. 167 at 11–12) The Court explained that "[b]ecause a dispatch is capable of generating destination information that includes appointment times, and is also capable of updating it in response to late information, it should be understood as a computer system that has vehicle management and monitoring functions, and not just any computer-based system remotely located from the vehicle." (*Id.* at 12)

The TCS Defendants argue that their accused products lack a "dispatch" that manages and monitors vehicles. (D.I. 376 at 5) In particular, the TCS Defendants assert that their system does not include the claimed "dispatch" because theirs is "a personal navigation system in which [redacted] (*Id.*) According to the TCS Defendants, [redacted] The TCS Defendants further argue that Vehicle IP cannot rely on the doctrine of equivalents ("DOE") to prove infringement, as TCS's personal navigation system does not perform substantially the same function as a dispatch and because Vehicle IP's expert failed to offer particularized testimony and argument to support a DOE theory. (*Id.* at 7)

Vehicle IP opposes summary judgment. Citing its own expert's opinion, Vehicle IP identifies a list of functions that it contends are components of managing and monitoring vehicles, such as sending rele-

vant traffic updates and notification to vehicles, offering detour routing information, and [redacted]. (D.I. 441 at 6–9) Vehicle IP maintains that the distinction of [redacted] has no bearing on whether the server manages and monitors vehicles. (*Id.* at 10) Vehicle IP also argues that it can prove infringement under the DOE. (*Id.* at 13–14)

Based on the record, the Court concludes that the parties present genuine issues of material fact precluding summary judgment. A reasonable jury could accept Vehicle IP's contention that the functions it has identified constitute managing and monitoring vehicles, thereby meeting the claim element "dispatch" as construed by the Court. Alternatively, a reasonable jury could accept the TCS Defendants' contrary view, based on the accused products being personal navigation systems in which [redacted] While there does not appear to be a genuine, material dispute as to how the accused TCS products function, both parties' experts' opinions as to the presence or non-presence of a dispatch in those products appear to be based on reasonable applications of the Court's construction of the claim term. Accordingly, it is appropriate to deny summary judgment and put the issue of infringement to a jury.[1]

### 9. Telenav Defendants' Motion for Partial Summary Judgment of Non–Infringement (D.I. 391)

The Telenav Defendants seek summary judgment that Telenav's Navigator products do not infringe any of the asserted claims of the '377 patent, arguing the Navigator products lack the claimed "dis-patch." (D.I. 392 at 1)[2] Specifically, the Telenav Defendants argue that the Navigator products' server provides information [redacted]. (*Id.* at 3) The Telenav Defendants suggest that [redacted]. (*Id.* at 5) They also argue that the functions Vehicle IP contends are attributes of managing and monitoring are, instead, simply information being sent and received. (*Id.* at 5–6) Finally, the Telenav Defendants argue that Vehicle IP cannot use the DOE to prove infringement because Telenav's personal navigation system does not perform substantially the same function as a dispatch and Vehicle IP's expert did not provide particularized testimony and argument to support a DOE theory of infringement. (*Id.* at 6–7)

Vehicle IP responds, with expert support, by identifying a list of functions that it contends constitute managing and monitoring of vehicles—such as providing route and navigation instruction to vehicles, providing speed limit information to vehicles, and monitoring requests for turn-by-turn directions and other information—which the record supports Telenav's accused products perform. (D.I. 441 at 3–6) Essentially, Vehicle IP offers the same response to the Telenav Defendants' arguments for summary judgment of non-infringement that it offered in response to the TCS Defendants' very similar arguments for summary judgment of non-infringement. (*See id.* at 9–14)

Accordingly, for the same reasons given above in connection with the TCS Defendants' motion, the Court will deny the

---

1. Alternatively, it may be appropriate for the Court to construe additional terms (such as "manage" and "monitor") and, thereafter, summary judgment or judgment as a matter of law (of infringement or non-infringement) may be warranted. The parties suggested such an approach. (*See, e.g.,* D.I. 515 at 12, 31) Should one or more of the parties now wish to pursue such an approach, they will need to seek leave from the Court to do so.

2. The Telenav Defendants do not seek summary judgment with respect to their Track Premium product, which they describe as a dispatch-based product used for fleet management. (D.I. 392 at 3)

Telenav Defendants' motion for summary judgment of non-infringement.

### 10. Vehicle IP's Motion for Summary Judgment of Infringement (D.I. 378)

Vehicle IP requests summary judgment that all Defendants infringe the asserted apparatus claims: that is, claims 15–17, 19, and 21 of the '377 patent. (D.I. 378) However, as explained above, the parties' conflicting positions on infringement are each supported by record evidence, including expert testimony, and each could be accepted by a reasonable jury. Therefore, summary judgment of infringement is no more warranted than summary judgment of non-infringement. Accordingly, the Court will deny Vehicle IP's motion.

### 11. Defendants' Motion for Partial Summary Judgment of No Direct Infringement of Method Claims (D.I. 379)

█ The Telenav Defendants seek summary judgment that their Navigator products do not directly infringe the asserted method claims: 25, 27, 28, 30, and 32 of the '377 patent. (D.I. 382 at 1–2) Based on identical arguments, the TCS Defendants seek summary judgment that their accused products do not directly infringe the asserted method claims. (*Id.*) "To infringe a method claim, a person must have practiced all steps of the claimed method." *Finjan*, 626 F.3d at 1206.

█ Defendants argue that Vehicle IP has offered no evidence that Defendants themselves perform each and every step of the asserted method claims, and further that Vehicle IP has not asserted that Defendants direct or control, or have entered into a joint enterprise with, the end users of the product. (D.I. 382 at 4–6) Defendants identify two steps of the asserted methods as being performed by the end user: "determining at the vehicle the vehicle position" ('377 patent col. 16 l. 36) and "determining at the vehicle in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information" (col. 16 ll. 37–39). (D.I. 382 at 2) Defendants also assert that Vehicle IP offers no evidence that they directly infringe the asserted claims by engaging in testing. (*Id.* at 4–5)

Vehicle IP responds that once the Telenav and TCS applications are turned on and a navigation session begins, [redacted]—and, therefore, Telenav and TCS perform all steps of the claimed method and directly infringe the claims. (D.I. 431 at 3) Vehicle IP also alleges that each group of defendants has formed a joint enterprise: AT & T and Verizon directly infringe the asserted method claims as a result of their joint enterprises with Telenav and TCS, respectively. (*Id.* at 5) Further, Vehicle IP cites evidence to support its contention that the Telenav and TCS Defendants tested the accused products, thereby directly infringing the method claims. (*Id.* at 2)

There is no genuine dispute that the [redacted]. (D.I. 432 Ex. 8 at ¶¶ 107, 158–59; Ex. 9 at ¶¶ 125, 163–64) Because the applications, and not the users, perform the claimed steps, the Telenav and TCS Defendants are not entitled to summary judgment of no direct infringement. *See Ericsson*, 773 F.3d at 1221. Furthermore, the record demonstrates genuine disputes of material fact as to whether Telenav and TCS formed joint enterprises with AT & T and Verizon (D.I. 432 Ex. 8 at ¶¶ 221–29; Ex. 9 at ¶¶ 223–32) and whether Defendants performed testing on the accused products (D.I. 432 Ex. 3 at 207–208; Ex. 5 at 44–53). Accordingly, the Court will deny Defendants' motion.

### 12. Defendants' Motion for Partial Summary Judgment of No Indirect or Willful Infringement (D.I. 381)

Defendants move for summary judgment of no indirect infringement of the

asserted claims. The TCS Defendants also seek summary judgment of no willful infringement. Vehicle IP has not alleged willful infringement against the Telenav Defendants.

"[I]ndirect infringement requires knowledge of the underlying direct infringement—not merely the knowledge of the existence of the patent." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016) (citing *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66, 131 S.Ct. 2060, 179 L.Ed.2d 1167 (2011); *Commil USA LLC v. Cisco Systems, Inc.*, — U.S. —, 135 S.Ct. 1920, 1926, 191 L.Ed.2d 883 (2015)). The willfulness inquiry asks whether a party has engaged in "conduct warranting enhanced damages," under 35 U.S.C. § 284, behavior the Supreme Court has described as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or [ ] characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, — U.S. —, 136 S.Ct. 1923, 1932, 195 L.Ed.2d 278 (2016). Prevailing on a claim of either indirect or willful infringement requires a patentee to prove, among other things, that an accused infringer acted with a specific intent to infringe. *See id.* at 1933 (willful infringement); *Global–Tech*, 563 U.S. at 765–66, 131 S.Ct. 2060 (2011) (indirect infringement).

Here, Defendants contend that a reasonable juror could not find they acted with a specific intent to infringe given that, throughout this case, Defendants held a reasonable, good-faith belief of non-infringement. (D.I. 383 at 3–5) Defendants particularly emphasize that in an earlier stage of this litigation the Court adopted Defendants' proposed claim constructions and then granted summary judgment of non-infringement—before Plaintiff prevailed on appeal, at which point the Federal Circuit reversed this Court's construction of certain terms as well as its grant of

summary judgment to Defendants. (*See id.* at 4; *see also Vehicle IP, LLC v. AT & T Mobility, LLC*, 594 Fed.Appx. 636, 638 (Fed. Cir. 2014)) Defendants contend that this Court's earlier ruling demonstrates that their belief they did not infringe was a reasonable belief.

The Federal Circuit has held that disputes as to whether an accused infringer's belief was a good-faith belief presents a question of fact. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010); *see also KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573 (Fed. Cir. 1985) ("Good faith, intent to deceive, scienter, [and] honest mistake are all questions of fact."). Even when a district court has sided with an accused infringer, if that holding is later altered on appeal it is possible that the overall record may allow a reasonable juror to find that an accused infringer acted without a good-faith believe of non-infringement. *See generally Smith & Nephew Inc. v. Arthrex, Inc.*, 603 Fed. Appx. 981, 990 (Fed. Cir. 2015) (holding, in similar context, that "district court's ruling and pronouncement could, at most, create a factual question, not an entitlement to a no-knowledge finding as a matter of law"). Here, then, the Court concludes that the issue of Defendants' good faith intent presents a genuine issue of material fact to be presented to the jury. The Court will, therefore, deny Defendants' motion regarding indirect infringement.

With respect to willfulness, the TCS Defendants further argue that Vehicle IP has failed to identify specific evidence of conduct warranting enhanced damages. (D.I. 383 at 5) In response, Vehicle IP cites to testimony from Mr. Beasley, an inventor named on the '377 patent who later worked on developing an accused product. (D.I. 435 at 6) According to Vehicle IP, Mr. Beasley's resume told Verizon about the '377 patent. (*Id.*) However, even

assuming that Verizon had knowledge of the '377 patent from Mr. Beasley, a party's pre-suit knowledge of a patent is not sufficient, by itself, to find "willful misconduct" of the type that may warrant an award of enhanced damages. *See Halo*, 136 S.Ct. at 1936 (Breyer, J., concurring). Vehicle IP does not identify other evidence, beyond pre-suit knowledge of the patent, that could show that the TCS Defendants' infringement was "egregious," "deliberate," "wanton," or otherwise characteristic of the type of infringement that warrants the Court exercising its discretion to impose the "punitive" sanction of enhanced damages. *Id.* at 1932. Vehicle IP does not, for example, show that "Mr. Beasley, TCS, or Verizon intentionally relied on Mr. Beasley's alleged prior knowledge of the patent" in developing its products. (D.I. 482 at 5) Nor does Vehicle IP demonstrate that Mr. Beasley was hired because of his knowledge of the '377 patent. Based on this record, no reasonable jury could find willful infringement of the '377 patent. Accordingly, the Court will grant the TCS Defendants' motion with respect to willfulness.

### 13. Defendants's Motion for Summary Judgment of Invalidity (D.I. 387)

Defendants seek summary judgment of invalidity based on their contentions that certain claims (4, 6, 8, 9, 15, 17, 19, 21, 25, 27, 30, and 32) would have been obvious in light of prior art reference Behr in view of Sprague and that other claims (5, 16, and 28) would have been obvious in light of Behr in view of Sprague and Trav-Tek. (D.I. 387 at 1) According to Defendants, Behr describes a route-guidance system using a cellular communications network that calculates estimated time of arrival at the remote server, meeting all the claim limitations except (1) calculating estimated time of arrival at the mobile unit and (2) calculating estimated time of arrival using traffic information. (D.I. 388

at 8) Defendants argue that Sprague and TravTek supply the missing limitations, as Sprague describes a system that calculates estimated time of arrival at the mobile unit (*id.* at 3) and TravTek is a personal navigation system that takes into account traffic information when calculating estimated time of arrival (*id.* at 6–8). Defendants argue that it would have been an obvious design choice to combine the mobile-unit-based calculation disclosed in Sprague with Behr's navigation system. (*Id.* at 10) Defendants further contend that because Behr describes a mobile unit that can access map information, such as traffic advisory information, it would have been obvious to incorporate traffic into the estimated time of arrival calculation, as described in TravTek. (*Id.* at 11–12) Finally, Defendants assert that just as the patent examiner was motivated to combine these same kinds of references during prosecution, it follows that a person of ordinary skill would have had a motivation to combine the identified prior art references. (D.I. 473 at 4–5)

Vehicle IP counters that summary judgment is inappropriate because Defendants failed to present expert testimony, the combined references do not disclose all of the claimed limitations, and Defendants did not address objective indicia of non-obviousness. (D.I. 433 at 1) Vehicle IP also contends that an ordinarily skilled artisan would not have been motivated to combine the references. (*Id.* at 7–8) For instance, according to Vehicle IP, conventional wisdom at the time of the invention favored improving on-board navigation systems rather than combining on-board systems with distributed systems having a remote server. (*Id.* at 8)

The record reveals a genuine dispute of material fact with respect to, at least, whether a motivation existed at the time of the invention for a person of ordinary skill

to have combined Defendants' references. (D.I. 390 Ex. E at 7; D.I. 434 Ex. 3 at ¶¶ 42–44, 67, 80, 142) There are also genuine disputes of material fact relating to Vehicle IP's objective evidence of non-obviousness, including the weight to be given to this evidence. (D.I. 434 Ex. 3 at ¶¶ 199–214) Accordingly, the Court will deny Defendants' motion.

**14. Vehicle IP's Motion for Partial Summary Judgment of No Invalidity under 35 U.S.C. §§ 102 and 112 (D.I. 369)**

Vehicle IP argues that the Court should grant summary judgment of no anticipation of the asserted claims by the prior art system TravTek because Defendants' expert conceded that TravTek does not disclose communicating destination using a cellular telephone network, a limitation that appears in every asserted claim. (D.I. 370 at 2–4) Vehicle IP also argues that the Court should grant summary judgment of no invalidity under § 112 because Defendants did not offer expert testimony to support their contention that the asserted claims fail to satisfy the enablement, written description, and definiteness requirements. (*Id.* at 5–8) In response, Defendants have withdrawn their assertion of §§ 102 and 112 affirmative defenses and ask that Vehicle IP's motion be denied as moot. (D.I. 439 at 1) Vehicle IP replies that the motion is not moot because Defendants have not stipulated to remove the affirmative defenses and Telenav and AT & T have asserted invalidity counterclaims. (D.I. 469 at 1)

The Court will deny without prejudice Vehicle IP's motion. The Court will further order the parties to meet and confer regarding a stipulation to remove Defendants' §§ 102 and 112 affirmative defenses and counterclaims from the case. Should the parties prove unable to agree to such a stipulation, Vehicle IP will be permitted to renew its motion for summary judgment.

**15. Telenav Defendants' Motion to Stay Vehicle IP's Claims against AT & T (D.I. 464)**

■ The Telenav Defendants move to stay Vehicle IP's claims against AT & T. The Telenav Defendants argue that because Telenav is the designer, developer, and supplier of the accused products, Vehicle IP's claims against AT & T are peripheral to its claims against Telenav. (D.I. 465 at 5) AT & T's alleged infringement is based solely on its sales of AT & T Navigator, a re-branded version of Telenav's GPS Navigator. (*Id.* at 5–6) The peripheral nature of the claims against AT & T is supported by Vehicle IP's allegation that Telenav is liable for the entire damages amount, regardless of whether the accused products were sold by Telenav, AT & T, or another wireless carrier, as well as the fact that Vehicle IP has not brought claims against Telenav's other wireless carrier partners. (*Id.* at 7–8) Although Vehicle IP argues that AT & T possesses infringement-related information (D.I. 503 at 2–3), Vehicle IP does not rely on AT & T documents to prove infringement (D.I. 508 at 7). Thus, the Telenav Defendants seek a stay to allow the suit against the manufacturer, Telenav, to proceed first. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).

The Court finds that the governing factors do not favor a stay. Although a stay would eliminate branding distinctions, Telenav admits that such distinctions are "irrelevant" (D.I. 465 at 9–10)—from which it follows that only minimal simplification would result from granting a stay. More importantly, discovery is complete and a trial date is set. Additionally, Vehicle IP would be prejudiced by having to proceed to separate trials against Telenav and AT & T, trials which would be marked by significantly overlapping issues. (D.I. 503

at 11)[3] Accordingly, the Court will deny Telenav's motion for a stay.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the TCS Defendants' motion for summary judgment of no willful infringement and deny all other motions. An appropriate Order follows.

**3.** This prejudice has only been heightened by the Court's decision, in connection with Defendants' motion to sever (D.I. 367), to grant separate trials to the Telenav Defendants (in February 2017) and the TCS Defendants (in July 2017). (*See* D.I. 524, 528, 531)